IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MAX INTERNATIONAL, LLC, a Utah limited liability company<br><br>                    Plaintiff,<br><br>v.<br><br>VITIMMUNE, INC., a Florida Corporation, dba Robkeller.com<br>                    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS**<br><br>Case No. 2:11-cv-00970 DN<br><br>Judge David Nuffer |

Plaintiff Max International, LLC (Max) brought an action against Defendant VitImmune, Inc. (VitImmune), alleging that VitImmune violated an agreement between the parties.[1]  In response, VitImmune filed a motion to dismiss Max's Complaint and also moved for an award of attorney's fees.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

On July 1, 2007, VitImmune and Max entered into a Product License Agreement (License).  Under the License, Max agreed to "license [VitImmune]'s Glutathione technology for the purpose of producing and marketing said technology in a form agreed upon by the parties."[3]  The License was "an exclusive world-wide license," meaning that VitImmune would "not license the glutathione technology to any other Company" except under certain circumstances.[4]

On December 23, 2010, Max and VitImmune entered into a second agreement—a Settlement, Amendment and Modification Agreement (Settlement Agreement)—which modified

---

[1] Complaint, docket no. 2, filed October 19, 2011.

[2] [Defendant's] Motion to Dismiss for Failure to State a Claim, docket no. 5, filed November 29, 2011.

[3] License ¶ 3, attached as Exhibit 1 to Complaint, docket no. 2, filed October 19, 2011.

[4] License ¶ 3.

the License.  Under the Settlement Agreement, Max and VitImmune agreed that "Max's license of Vitimmune's Glutathione technology shall be *non-exclusive* and that Vitimmune shall have the right to market or license such technology as Vitimmune may determine in its sole discretion . . . ."[5]  The only limit on VitImmune's discretion to license was that VitImmune could not "license its Glutathione technology to *another entity* while Max is making timely payments due under this agreement."[6]  Subsequently, VitImmune began selling its glutathione technology through a website it created.[7]

Max filed a Complaint based on two allegations.  First, that it was the "exclusive licensee of VITIMMUNE'S glutathione technology pursuant to the LICENSE and the [Settlement Agreement],"[8] and second, that it was current on all payments under the Settlement Agreement.[9] Max therefore claimed VitImmune breached the parties' agreement by creating and maintaining a website to sell the glutathione technology.[10]

MOTION TO DISMISS

VitImmune argues that dismissal of Max's Complaint is appropriate because, under the controlling agreement (the Settlement Agreement) Max does not have an exclusive license to sell

---

[5] Settlement Agreement ¶ 3, attached as Exhibit 2 to Complaint, docket no. 2, filed October 19, 2011 (emphasis added).  In its entirety, paragraph 3 of the Settlement Agreement provides:

> Non-Exclusivity. Notwithstanding any term to the contrary in the License, the Parties agree that Max's license of Vitimmune's Glutathione technology shall be non-exclusive and that Vitimmune shall have the right to market or license such technology as Vitimmune may determine in its sole discretion except that Vitimmune shall not license its Glutathione technology to another entity while Max is making timely payments due under this agreement. Max at its option may continue to keep Vitimmune from licensing the technology to another entity by making consecutive monthly payments (the first such payment being 30 days after the last required payment is made) in the amount of $50,000 per month after all required payments are made.

[6] Settlement Agreement ¶ 3 (emphasis added).

[7] Complaint ¶ 7.

[8] *Id.* ¶ 9; *see also id.* ¶¶ 12, 15.

[9] *Id.* ¶ 6.

[10] *Id.* ¶ 9.

VitImmune's glutathione technology.[11]  VitImmune argues that the Settlement Agreement "does not preclude VitImmune from directly *marketing* or *selling* its glutathione technology to *any* person or entity;"[12] rather, VitImmune "is only restricted from *licensing* that technology to another entity."[13]  VitImmune therefore argues that because it did not license its glutathione technology to another entity (instead, it simply sold the technology through a self-created website), Max's claims are defeated as a matter of law.[14]  The court agrees.

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[15]  "In doing so, all facts alleged in the complaint are taken as true and all reasonable inferences are indulged in favor of the plaintiffs."[16]  However, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[17]

There is no factual support for Max's first allegation that Max was the "exclusive licensee" of VitImmune's glutathione technology.  While it is true that Max held exclusive license under the original License, the parties' Settlement Agreement made clear that, "*[n]otwithstanding any term to the contrary in the License*, . . . Max's license of Vitimmune's Glutathione technology shall be *non-exclusive*,"[18] which meant that  VitImmune was free to

---

[11] *See* [Defendant's] Memorandum in Support of Motion to Dismiss (Supporting Memorandum), docket no. 6, filed November 29, 2011, at 8.

[12] Supporting Memorandum at 2 (emphasis in original).

[13] *Id.* (emphasis in original).

[14] *See id.*

[15] *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (citation omitted).

[16] *Id.* (citation omitted).

[17] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted).

[18] Settlement Agreement ¶ 3 (emphasis added).

"market or license such technology as Vitimmune may determine *in its sole discretion* . . . ."[19] Therefore, the Settlement Agreement unequivocally abrogated the exclusivity that previously existed under the License.

Moreover, VitImmune did not breach the parties' agreement by selling the glutathione technology directly on the internet. As the Settlement Agreement makes clear, the only restriction on VitImmune's ability to market or license the technology was that VitImmune could not *license* the glutathione technology to *another entity*.[20] The Settlement Agreement does not limit VitImmune's ability to market or sell the technology directly. Max's Complaint acknowledges that the website which sells the glutathione technology was "creat[ed] and maintain[ed]" by VitImmune itself.[21] Because Max does not allege in its Complaint that VitImmune has licensed the technology to another entity, the Complaint fails as a matter of law.

Max asserts that the intent of the parties is unclear from the language of the Settlement Agreement and that Max would have never agreed to allow VitImmune to engage in direct competition with Max.[22] But that is exactly what the plain language of the Settlement Agreement allows. The plain language of the Settlement Agreement makes clear that the parties intended, in no uncertain terms, to enter into a "non-exclusive" agreement and that VitImmune could market the glutathione technology at its own discretion.

Max also claims VitImmune was prohibited from selling or marketing the glutathione technology directly on its own website because Max remained current on its payments.[23] But

---

[19] *Id.* (emphasis added).

[20] *See id.*

[21] Complaint ¶ 9.

[22] *See* [Plaintiff's] Response to Defendant's Motion to Dismiss for Failure to State a Claim (Opposing Memorandum), docket no. 16, filed Dec. 28, 2011, at 4.

[23] *See* Opposing Memorandum at 5; Complaint ¶ 6.

VitImmune was free to sell or market the technology at any time, regardless of Max's conformance with payment obligations.  The Settlement Agreement did not restrict VitImmune from *selling* or *marketing* the technology; rather, it only provided that VitImmune could not *license* the technology to another entity as long as Max remained current on its obligations.

Because Max has failed to allege that VitImmune licensed the technology in violation of the parties' agreement, Max has failed to state a claim upon which relief can be granted. Therefore, VitImmune's Motion to Dismiss is GRANTED.

## ATTORNEY'S FEES

In its Motion to Dismiss, VitImmune asserts that it is "entitled to recover all of its reasonable attorney fees and costs in defending this action."[24]  Florida law governs the Settlement Agreement.[25]  Under Florida law, "each party generally bears its own attorneys' fees unless a contract or statute provides otherwise."[26]  If an agreement clearly provides for attorney's fees to the prevailing party, "courts have *no discretion* to decline to enforce" the attorney's fees provision.[27]

Here, the Settlement Agreement clearly provides for attorney's fees to the prevailing party.  The Settlement Agreement states: "If any party shall seek to enforce or protect its rights under this Agreement . . . the prevailing party shall be entitled to receive from the other party payment of its costs and expenses, including reasonable attorney fees incurred . . . ."[28]

---

[24] Supporting Memorandum at 9.

[25] Settlement Agreement ¶ 13.

[26] *Price v. Tyler*, 890 So.2d 246, 250 (Fla. 2004) (citation omitted).

[27] *Brickell Bay Club Condominium Ass'n, Inc. v. Forte*, 397 So.2d 959, 960 (Fla. 3d Dist. Ct. App. 1981) (emphasis added)(rev. den. 408 So.2d 1092 (Fla. 1981).

[28] Settlement Agreement ¶ 14.

In *Brickell Bay Club v. Forte*, the parties entered into an agreement which provided that if the parties were involved in "any litigation arising out of this Contract, the prevailing party shall be entitled to recover all costs incurred, including reasonable attorneys' fees."[29]  A dispute arose and litigation followed.[30]  The trial court declined to award the prevailing party reasonable attorney's fees and costs, reasoning that attorney's fees were not justified "because the action had been brought in good faith and on fairly debatable grounds."[31]  The prevailing party appealed regarding the denial of attorney's fees.[32]  The appellate court reversed, holding that the fees provision gave the prevailing party "a clear and unequivocal right to the recovery of both attorney's fees and costs."[33]

Here, because the Settlement Agreement between VitImmune and Max clearly provides for attorney's fees to the prevailing party, this court has "no discretion to decline to enforce" the attorney's fees provision in the Settlement Agreement.[34]  VitImmune has "a clear and unequivocal right to the recovery of both attorney's fees and costs."[35] Therefore, VitImmune's request for attorney's fees is GRANTED.

---

[29] 397 So.2d at 960.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *See Brickell Bay Club*, 397 So.2d at 960.

[35] *Id.*

# ORDER

IT IS HEREBY ORDERED that VitImmune's Motion to Dismiss is GRANTED. VitImmune's complaint is dismissed with prejudice.  VitImmune's request for attorney's fees is GRANTED as provided herein.

IT IS FURTHER ORDERED that on or before February 10, 2012, VitImmune may file a motion for determination of its costs and expenses including reasonable attorney fees incurred, and on or before February 17, 2012, any response may be filed.

Dated February 1, 2012.

BY THE COURT:

_____

David Nuffer
U.S. Magistrate Judge